Filed 9/18/14  P. v. Straws CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY STRAWS,<br><br>    Defendant and Appellant. | 2d Crim. No. B243293<br>(Super. Ct. No. BA394094)<br>(Los Angeles County) |

Anthony Straws appeals from the judgment entered after a jury convicted him of three counts of perjury based on false statements he had made in applications for a driver's license.  (Pen. Code, § 118, subd. (a).)[1]  Appellant admitted two prior prison terms (§ 667.5, subd. (b)) and one prior serious or violent felony conviction within the meaning of California's "Three Strikes" law.  (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)  He was sentenced to prison for 10 years.

Appellant argues that the trial court erroneously denied his *Wheeler-Batson* motion. (*People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*); *Batson v. Kentucky* (1986) 476 U.S. 79 [106 S.Ct. 1712, 90 L.Ed.2d 69] (*Batson*).)  The motion contested the prosecutor's use of peremptory challenges to strike Hispanic women from the jury.  We affirm.

*Wheeler-Batson Motion*

---

[1] All statutory references are to the Penal Code.

"The applicable law is well settled. '[Under *Wheeler,*] [a] prosecutor's use of peremptory challenges to strike prospective jurors on the basis of group bias - that is, bias against 'members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds' - violates the right of a criminal defendant to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the state Constitution. [Citations.] [2] [Under *Batson,*] [s]uch a practice also violates the defendant's right to equal protection under the Fourteenth Amendment. [Citations.] [¶] 'The United States Supreme Court has recently reaffirmed that *Batson* states the procedure and standard trial courts should use when handling motions challenging peremptory strikes. "First, the defendant must make out a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.' [Citations.] Second, once the defendant has made out a prima facie case, the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes. [Citations.] Third, '[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.' [Citation.]" ' [Citations.]" (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1104, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

*Jury Selection*

After the prosecutor exercised her fifth peremptory challenge, appellant made a *Wheeler-Batson* motion. Defense counsel contended that "there's a prima facie showing" of "a systematic exclusion specifically of Hispanic women." Counsel asserted that peremptory challenges had been exercised against three Hispanic women - juror numbers 1, 8, and 21. Our Supreme Court has "assumed" that "Hispanic women constitute a separate cognizable group for *Wheeler/Batson* purposes, distinct from both women generally and Hispanics generally." (*People v. Bonilla* (2007) 41 Cal.4th 313, 344, & fn.

---

[2] *Wheeler* was disapproved on another ground in *Johnson v. California* (2005) 545 U.S. 162 [125 S.Ct. 2410, 162 L.Ed.2d 129].

14; accord, *People v. Garceau* (1993) 6 Cal.4th 140, 171, disapproved on another ground in *People v. Yeoman* (2003) 31 Cal.4th 93, 117-118.)

The trial court said that it was "not finding . . . any prima facie showing," but it asked the prosecutor to respond to defense counsel's contention.[3] The prosecutor responded that "juror no. 1 . . . is not very highly educated . . . and I didn't know if she would be a very smart juror." The trial court agreed that there were bona fide grounds for peremptorily challenging juror number 1. The court stated, "There's no doubt about it, no. 1 had life experience issues, you name it." Appellant did not object to the court's statement. Juror number 1 initially said that she had no education, but then said that she had been to high school.

As to juror number 21, the prosecutor noted that this juror had "stated that she has a friend who's been accused, and she's gone to support him." Juror number 21 said that, about six years earlier, she had gone "to court to support a friend" who had been charged with "drug smuggling." The case involved "a large amount" of drugs. Her friend was found guilty and is still in prison.

As to juror number 8, the prosecutor stated that this juror "was the female who, at some point when the court was questioning her, started talking about child support and that she'd been in court in regards to child support. That's a little concerning to me, that she's not a law-abiding citizen, that she --" The court interrupted and said, "Well, I couldn't tell on that answer whether she was seeking it or -- I got the feeling she was seeking child support . . . ." The prosecutor replied, "Yeah. It just seems odd to me as to what the issues were in regards to that." Juror number 8 said that she was a single parent with five children. She worked as a sales clerk at Rite-Aid. When the court asked her if she had prior jury experience, she responded, "Yes, for child support." But she then said that she had not

---

[3] This was proper procedure. "Even where the trial court has not found a prima facie case of discrimination, which would require the prosecutor to state reasons for the challenged excusals, it is helpful, for purposes of appellate review, to have the prosecutor's explanation. We therefore encourage court and counsel in all *Wheeler/Batson* proceedings to make a full record on the issue." (*People v. Zambrano*, *supra*, 41 Cal.4th at p. 1105, fn. 3.)

previously served as a juror. The court inquired, "[Y]ou went to court for child support?" Juror number 8 answered, "Yes."

After hearing the prosecutor's explanation for excusing the three Hispanic women, the court declared, "I don't find a prima facie case." Later on, after the prosecutor excused juror number 26, appellant renewed his *Wheeler-Batson* motion. Defense counsel said that the prosecutor had exercised nine peremptory challenges and had excused a total of six Hispanic women. Counsel did not identify the three Hispanic women in addition to juror numbers 1, 8, and 21. The trial court responded that "there was ample basis to excuse . . . the last person," i.e., juror number 26. Juror number 26 said that her sister had a drug problem and had been found guilty of transporting drugs. Juror number 26 had gone to court for her sister's sentencing.

The court again determined that appellant had not established a prima facie case of group bias, but it allowed the prosecutor to give an explanation. The prosecutor declared that "the last young lady I kicked [juror number 26] was an Asian female whose sister had been prosecuted for some type of drug charge." The judge responded that he did not know whether the juror was Asian or Hispanic. The prosecutor insisted, "I think she was clearly Asian." The prosecutor continued: "And the two [jurors] prior to that were very clear. One, her husband was convicted of a drug charge in which there were immigration issues that came to light . . . . [¶] Prior to that, I don't remember the race of that person. I know she was the one that stated that her son had fraudulently used the Avis credit cards. Obviously, that would not work out well for me."

The two jurors to whom the prosecutor was referring were juror numbers 24 and 28. Juror number 24 said that she had been in court "to support[ her] husband," who was charged with "having drugs inside his car" and driving while under the influence. She was "trying to fix his paper[s] and immigration [issues] came up." Juror number 28 said that her son used to work for Avis and had been arrested for fraudulently using an Avis credit card. "Three cops" came to her house to arrest him. "That scared [her]."

The prosecutor remarked: "[J]ust so the record is very clear, I want to point out the fact that currently on the jury is number 14, Hispanic race, female; juror number 16 is a

4

Hispanic female; juror number 22 is a Hispanic female." The prosecutor accepted the jury as constituted. Defense counsel did not dispute that three Hispanic women remained on the jury.

*Discussion*

A prosecutor is presumed to have exercised peremptory challenges in a constitutional manner. (*People v. Alvarez* (1996) 14 Cal.4th 155, 193.) The defendant has the burden of making a prima facie showing of purposeful discrimination. (*Ibid.*) The defendant makes a prima facie showing "by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." (*Johnson v. California*, *supra,* 545 U.S. at p. 170; see also *People v. Blacksher* (2011) 52 Cal.4th 769, 801 ["the defendant must demonstrate ' " 'that the totality of the relevant facts gives rise to an inference of discriminatory purpose' " ' "].) "[W]e independently review the record and determine whether it 'supports an inference that the prosecutor excused a juror on the basis of [group bias].' [Citation.]" (*People v. Edwards* (2013) 57 Cal.4th 658, 698; accord, *People v. Harris* (2013) 57 Cal.4th 804, 834.)

Based on our independent review of the record, we agree with the trial court that appellant did not make a prima facie showing of group bias. Three of the six allegedly Hispanic jurors had a close relative who had been arrested for or convicted of a criminal offense. " '[A] prosecutor may reasonably surmise that a close relative's adversary contact with the criminal justice system might make a prospective juror unsympathetic to the prosecution.' [Citation.]" (*People v. Jones* (2013) 57 Cal.4th 899, 920.) The prosecutor disputed the Hispanic ethnicity of one of these three jurors - juror number 26 - and the trial judge said that he did not know whether she was Hispanic or Asian. Appellant produced no evidence of juror number 26's ethnicity; therefore, he could not have met his burden of producing evidence sufficient to support an inference of group bias as to juror number 26.

A fourth juror - juror number 21 - had a friend who had been convicted of "drug smuggling" and was still in prison. Juror number 21 had gone "to court to support [her] friend." A prosecutor could reasonably surmise that, because of her friend's negative

5

experience with the criminal justice system, juror number 21 might be unsympathetic to the prosecution.

This leaves jurors 1 and 8. Although juror number 1 said nothing that would justify striking her from the jury, it is clear from the trial court's remarks that her demeanor during voir dire raised questions about her ability to serve as a juror. The trial court stated: "There's no doubt about it, number 1 had life experience issues, you name it." "Here, the trial judge, who had observed the voir dire, was in the best position to determine" this matter. (*People v. Davenport* (1995) 11 Cal.4th 1171, 1201, overruled on another ground in *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5.) The issue comes down to whether the record supports an inference that the prosecutor struck juror number 8 because of bias against Hispanic women. Juror number 8 said that she had gone "to court for child support." It is reasonable to infer, as the trial court inferred, that she had gone to court seeking support from the father of her five children. The prosecutor, on the other hand, inferred that she was the parent who had failed to pay child support. The prosecutor expressed concern that juror number 8's involvement in the child support proceeding showed "that she's not a law-abiding citizen." Even if the inferences drawn by the prosecutor were unreasonable, this would not mean that appellant established a prima facie case of group bias based on the prosecutor's removal of juror number 8. "Although circumstances may be imagined in which a prima facie case could be shown on the basis of a single excusal, in the ordinary case, . . . to make a prima facie case after the excusal of only one or two members of a group is very difficult. [Citation.]" (*People v. Bell* (2007) 40 Cal.4th 582, 599, fn. 3.)

The circumstances here do not give rise to an inference of discriminatory purpose in striking juror number 8. The prosecutor left three Hispanic women on the jury. "Although ' "the fact that the jury included members of a group allegedly discriminated against is not conclusive, it is an indication of good faith in exercising peremptories, and an appropriate factor for the trial judge to consider in ruling on a *Wheeler* objection." ' [Citation.]" (*People v. Williams* (2013) 56 Cal.4th 630, 663; see also *People v. Garcia* (2011) 52 Cal.4th 706, 747-748 ["ultimate inclusion on the jury of members of the group allegedly targeted by discrimination indicates ' "good faith" ' in the use of peremptory challenges, and may show

6

under all the circumstances that no *Wheeler/ Batson* violation occurred"].)

"Neither [appellant] nor any of the victims or percipient witnesses to the crimes were [Hispanic women]." (*People v. Bell*, *supra*, 40 Cal.4th at p. 599.) Appellant is an African-American man. The witnesses mentioned in appellant's statement of facts in his opening brief, as well as the witnesses who testified at trial, all have apparently non-Hispanic surnames: Sondra Swift, Susana Rangel, and David Wisansky. "[T]hat [appellant] was not a member of . . . the . . . cognizable group[] involved . . . neither proves the peremptory challenges against members of [this] group were not discriminatory nor defeats [appellant's] motion as a matter of law; it merely identifies a factor that, because it is absent, fails in this case to support an inference of discrimination." (*Id*., at p. 600.)

"The exercise of even a single challenge based on [group bias] is constitutionally proscribed. [Citation.]" (*People v. Howard* (2008) 42 Cal.4th 1000, 1018, fn. 10.) But our Supreme Court has "found it ' "impossible," ' as a practical matter, to draw the requisite inference [of group bias] where only a few members of a cognizable group have been excused and no indelible pattern of discrimination appears. [Citations.] Similar concerns prevent us from rejecting the instant ruling simply because the prosecutor excused" five Hispanic women, when the record shows that reasonable grounds existed to strike four of the women, three Hispanic women remained on the jury, and neither appellant nor any witnesses were members of the cognizable group. (*People v. Garcia* (2011) 52 Cal.4th 706, 747.)

*Disposition*

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

7

John S. Fisher, Judge

Superior Court County of Los Angeles

_____


Michael Allen, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Analee J. Brodie, Deputy Attorney General, for Plaintiff and Respondent.